## EDWARD MENDEL

### v.

## HERMAN FINK.

1. RECOUPMENT—GENERAL RULE.—Recoupment of damages arising out of the same transactions, is in the nature of a cross-action, and the defendant is held to the same requirements as to evidence in support of such plea as he would be had he brought a distinct action against the plaintiff. The burden of proof is upon him to establish all the essential elements of a cause of action by a preponderance of evidence.

2. LANDLORD AND TENANT—DAMAGE TO TENANT BY FLOODING WITH WATER.—There is no implied contract on the demise of real estate, that it shall be fit for the purposes for which it was let, and in the absence of an express contract by the landlord to keep the premises in repair, he cannot be made liable for damage caused to a tenant by water coming from a water-closet above upon his goods and property.

3. WHEN LANDLORD LIABLE.—In order to make a landlord liable to his tenant for such injuries, it must be shown that the agencies causing the damage were under the management of the landlord or his agent, and that the damage arose by reason of unskillful use of such agencies.

4. DAMAGES.—Evidence of damages resulting to an under-tenant of the

Mendel v. Fink.

tenant, the tenant not having been obliged to pay the same, is not admissible to enhance the damages in an action between the tenant and his landlord for damages.

Appeal from the County Court of Cook county; the Hon. Mason B. Loomis, Judge, presiding. Opinion filed March 1, 1881.

This was a proceeding by Mendel, the appellant, upon a distress warrant issued Feb. 3, 1879, for $335, as rent due from appellee Fink upon a demise by the former to the latter of stores No. 129, 131, 133, Van Buren street, and No. 26 Pacific Avenue; also rooms on 2nd floor of 127 Van Buren street, in the city of Chicago; which warrant was executed and returned to the clerk of the county court, and to which Fink, under the statute, filed the pleas of *nil debet*, and no rent in arrear. Upon the trial before this court and a jury, Mendel gave in evidence a lease under seal, made April 8, 1879, whereby he leased all of said premises, except the rooms on the second floor, to Fink, from May 1, 1878, to April 30, 1879, which lease was executed by Fink, by which he covenanted to pay $1,560, as the rent, payable in monthly installments at the end of each month of $130 each; he also covenanted that he had received the demised premises in good order and condition, and that all plumbing, water-pipes, gas-pipes, and sewerage should be at his risk. Evidence was given tending to show that the rooms on the second floor were rented by parol at $10 per month; and that for the whole there was rent in arrear to the amount of $335.

For the defendant, evidence was given tending to show that he occupied two of said stores—one for a sample-room, the other for a restaurant. Store No. 129, he had sub-let to one Bergheim, who was a dealer therein in clothing; that several times during defendant's occupancy under said lease, dirty and bad-smelling water came down from a water-closet above (where the same was located was not shown) upon defendant's table among his guests; into the kitchen while cooking was being done; into his bar and on his billiard tables; in consequence of which plastering fell, breaking his dishes; his prop-

erty was damaged and business broken up. And against the objections of plaintiff, evidence was given tending to show the amount of damage sustained, with the view of recouping the same from the claim for rent. The defendant was also permitted, against the objection of plaintiff, to prove that after he had sub-let 129 to Bergheim, the goods of the latter were injured by the same means ; and he, making a claim against defendant for damages, such claim was compromised at $50, which defendant paid Bergheim. This evidence was apparently given to enhance defendant's damages, and there was no evidence tending to show that defendant was liable to Bergheim for any damage of the kind to him. There. was no evidence tending to show any fraud on the part of Mendel at the time of making the lease, or contract on his part to keep the demised premises in repair ; neither was there any evidence beyond the fact of the water coming down, tending to show negligence on his part in respect to the water-closet or pipes in the other apartments of the building, either as to their construction or use. No instructions were asked or given on behalf of the defendant ; and all those asked for plaintiff were given except one, as follows :

" If the jury believe from the evidence that the defendant leased the premises described in the written lease introduced, and that by the terms of such lease the defendant agreed that " all plumbing, water pipes, gas pipes and sewerage" should be at his own risk, and that while he was in the occupancy of said premises his goods and property were damaged by reason of an overflow of water coming from the plumbing or water pipes on the floor above, the one occupied by the defendant, and that such overflow was either an accident, or caused by some third party, then they are instructed that such damage of the defendant, if any, cannot be set off or recouped against the plaintiff's claim for rent, and they must find for the plaintiff, and in arriving at the amount they must not deduct any sum for such overflowing."

The jury found for the defendant; and the court, overruling plaintiff's motion for a new trial, gave judgment on the verdict, and the plaintiff appealed to this court.

Mr. JOHN G. REID, for appellant; that recoupment will be allowed whenever an action for damages arising out of the subject-matter of the suit can be sustained, cited Peck v. Brewer, 48 Ill. 54; Burroughs v. Clancey, 53 Ill. 30.

The burden of proof is on the party setting up recoupment: East v. Crow, 70 Ill. 91.

A lessee is not released from payment of rent because the premises are injured during the tenancy: Peck v. Ledwidge, 25 Ill. 109; Gridley v. City of Bloomington, 68 Ill. 47; Chicago v. O'Brennan, 65 Ill. 160; Taylor's Land. and Ten. § 4.

No liability can attach unless it appear the landlord agreed to make repairs, or the damage was caused by the act, procurement or omission of the landlord or his agent: Taylor v. Bailey, 74 Ill. 178.

Generally, against the right of defendant to recover damages: 1 Addison on Torts, 240; Morgan v. Smith, 70 N. Y. 537; Gilhooley v. Washington, 4 Const. 217; Moore v. Goodell, 34 N. Y. 527; Olmstead v. Burke, 25 Ill. 86.

Mr. JAMES LANE ALLEN, for appellee; as to the right to recoup damages against a claim for rent, cited Lynch v. Baldwin, 69 Ill. 210; Pepper v. Rowley, 75 Ill. 262; Lindley v. Miller, 67 Ill. 244; Streeter v. Streeter, 25 Ill. 155; Leadbeater v. Roth, 25 Ill. 587; Wade v. Halligan, 16 Ill. 507; Wright v. Lattin, 38 Ill. 293

McALLISTER, P. J.   Recoupment of damages arising out of the same transaction, is in the nature of a cross-action. In order to a defense to the claim of plaintiff below for rent, by way of recoupment of damages sustained by defendant, by reason of the alleged nuisance, the latter was subject to the same requirements, in respect to evidence, to which he would have been subject had he brought a distinct action against the plaintiff, as his landlord, to recover for the same injury. In that case the burden of proof would have been upon him to establish all the essential elements of a cause of action by a preponderance of evidence.   Was that requirement met in making out the defense which prevailed in this case?   We think not.   There is no pretense that the landlord was under

any express contract to keep the demised premises in repair. It is clear law, that except, perhaps, as to letting a furnished house or apartments, there is no implied contract on the demise of real estate, that it shall be fit for the purposes for which it was let. Taylor on Landlord and Tenant, § 381, and cases in note 1, p. 294.

A liability upon contract, express or implied, being excluded from the consideration of the case, then the question arises, what circumstances should be shown in order to fix the landlord with responsibility for the damages in question. The act of providing his building with artificial means for supplying it with water and water-closets, is of itself a lawful act, and does not impose upon the owner any obligation in the nature of a guaranty of the safety to occupants of a lower floor. So that if, in providing such means, the owner makes use of sufficient materials, and does the work, or causes it to be done in a reasonably careful, skillful and workmanlike manner, then he would be liable to the occupant of a lower floor only for an improper or negligent use of such agencies. If however they were not under his management, or that of his servants, but were under the management of a tenant or tenants, and the latter made a negligent use of them, the landlord would not be responsible. The basis of a liability in the absence of contract must, therefore, be laid in some act of malfeasance on the part of the landlord, or negligence in him or his servants, resulting in the injury. Robbins v. Mount, 4 Robertson (N. Y.), 553; 1 Thompson on Neg. 91; Shearm. & Redf. on Neg. §§ 512, 513 and 514.

In Warren v. Kauffman, 2 Phila. 259, the Supreme Court of Pennsylvania held that if a man has a hydrant on his premises, and the water runs from it and through his floor into a story beneath him and injures the occupant, there *ipso facto* negligence is *prima facie* made out, and he is responsible for the injury, unless he can show that it happened in some other way.

The facts of that case are not reported; but we are bound to assume from those grouped together in the brief judgment of the court, that the hydrant in question there was at the time

under the management of the defendant or his servants.  A tenant of the owner could not from that relation alone, be regarded as the servant of the owner.   The doctrine, as applied by the court there, is based upon reasoning like this :   Where the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen, if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care.   For authorities as to the application of the rule, Sec. 2, Thomp. on Neg. 1227, *et seq.*   If that rule can be properly applicable to this case, under any circumstances, it clearly cannot be, without evidence that the water-closet in question was under the management of the plaintiff below, the landlord or of his servants.   There was evidence that the landlord made certain repairs in a wash-room in the upper story; but the defendant gave evidence tending to show that the upper story or stories were occupied by tenants of the plaintiff.   There was no evidence tending to show where the particular water-closet from which defendant claimed the filthy water came which injured him was located, or tending to show any defects in the construction or use of the same, beyond the mere fact that such water ran down into defendant's rooms.   So we are forced to the conclusion that the verdict is unsupported by the testimony.

The court below permitted the defendant to prove, by way of enhancing his damages, that Bergheim, who had sub-let of defendant one of the demised stores, was also injured by such water coming down on his goods; that he made a claim against defendants for damages, which the latter compromised, allowing Bergheim fifty dollars.   There was no evidence to show how defendant was liable to Bergheim for such damage, and the evidence was therefore incompetent.

As the case stands, we cannot construe the covenants of defendant contained in the lease, to determine whether they would bar his right of recovery, for the reason that the real cause of the nuisance is in no respect disclosed by this record, the evidence only tending to show that the filthy, bad-smelling

water came from a water-closet in an upper story. Whether the immediate cause or defect was in the plumbing, water-pipes or sewerage, or what it was, we cannot tell from this record. The instruction asked for plaintiff below which the court refused, seems to submit the construction—a question of law when the surrounding circumstances are ascertained—to the jury, and to assume that the nuisance was occasioned by the mere overflow of water coming from the plumbing or water-pipes. What was the proximate cause, was a question of fact for the jury to find from evidence. We think that instruction was properly refused, but that there should be a new trial on the other grounds indicated.

Reversed and remanded.