## Mary Quinn v. Bridget Crowe.

1. LANDLORD AND TENANT—*Landlord Not Bound to Keep Premises in Repair.*—A landlord is not bound to keep leased premises in repair in the absence of an agreement by him to do so.

2. SAME—*No Implied Contract that Real Estate Shall be Fit for the Purpose for Which it is Let.*—Except, perhaps, as to letting a furnished house or apartment, there is no implied contract on the demise of real estate, that it shall be fit for the purposes for which it is let.

3. SAME—*When Agreement to Repair is a Mere Gratuity.*—The circumstance that defendant agreed to repair a porch after the upper rail was broken off, and after an accident to the plaintiff, did so, amounts to

nothing but a gratuity upon her part, if she was under no original obligation to keep the building in repair.

4.  SAME—*What is Not Sufficient to Make the Landlord a Covenantor to Repair.*—A landlord's self-interest will prompt him to do many things to his property, during the term of a lease of it, to protect it from decay or injury, but his so doing does not make him a covenantor to repair.

**Action in Case,** for personal injuries.   Appeal from the Circuit Court of Cook County; the Hon. FRANK BAKER, Judge, presiding.   Heard in the Branch Appellate Court at the March term, 1899.   Reversed.   Opinion filed April 4, 1900.

WARWICK A. SHAW, attorney for appellant.

ROBERT P. BATES and FREDERICK W. STORY, attorneys for appellee.

MR. JUSTICE SHEPARD delivered the opinion of the court.

The appellee sued, and recovered, in the Circuit Court, a judgment for $800, for injuries alleged to have been sustained to her person by being precipitated from the porch of a house belonging to the appellant and rented by appellant to the appellee, or her daughter, for occupation by herself and daughters.

The appellee fell from the porch at a time when she, with several other members of her family, was occupying it, she knowing at the time that it was in a defective condition of repair, in that the upper one of the three rails that inclosed one side of the porch had been broken off some days before and not replaced.   There may have been other less visible defects in the porch, but the appellee certainly knew of the broken rail, and the clear weight of the evidence is that she would not have fallen to the ground except for the absence of the rail.

We are not disposed to enter upon the details of the evidence as to the immediate cause of appellee's fall; nor to inquire whether or not appellee was guilty of such contributory negligence as to preclude a recovery by her, although, under the facts in the record before us, much might be said against her right of recovery, because of her own negligence.

The inquiry at the outset is, as the trial judge very well explained to the jury in his oral charge, whether or not the appellant in her contract of leasing agreed to keep the premises in repair during the term of the tenancy.

The law is too well settled to require the citation of authorities in support of the general proposition that the landlord is not bound to keep leased premises in repair in the absence of an agreement by him to do so.

" The tenant can not compel him to repair, unless he has bound himself by an express agreement to that effect." 1 Taylor's Landlord and Tenant (8th Ed.), Sec. 327.

" It is clear law, that except, perhaps, as to letting a furnished house or apartment, there is no implied contract on the demise of real estate, that it shall be fit for the purposes for which it was let." Mendel v. Fink, 8 Ill. App. 378.

The original leasing for one year, and the two subsequent renewals for a year each, were verbal. The only evidence adduced on the part of the appellee tending to show an agreement by appellant to keep the premises in repair is found in the testimony of a niece of hers and one of her daughters, as to what was said by appellee on the occasion of the original leasing.

Mary McMahon, the niece, testified :

" Mrs. Quinn (appellee) said she always kept her house in good repairs; she said she always kept her house in good repair.  *   *   *   I can't remember anything else.  *   *   * That is what she did say."

Mary Crowe, the daughter who claims to have rented the house, testified :

" When we first rented the house, she (appellee) told us she kept her property in good repair, and if there was any repairing to be done she would do it, of course."

Than in answer to a question by appellee's counsel as follows :

" Did she do any repairing for you before you moved in there ? "

She answered :

" Yes; she did."

We have diligently examined for any other evidence on the subject, but find none on the part of appellee. The appellant denied making any statements such as the foregoing attribute to her, and none but the three persons seem to have been present.

Now, it is too plain for argument that, assuming the testimony of Miss McMahon and Miss Crowe to be the precise truth, such statements by the appellant did not amount to an agreement by appellant to keep the premises in repair. It is no promise or agreement at all, beyond, possibly, one by implication to do the present repairs that Miss Crowe testifies were done.

The jury had no basis in any evidence that was before them to find that appellant ever, at any time, agreed to keep the premises in repair.

The subsequent agreement by appellant, at the time one of the renewals of the lease was made, to paper some parts of the house, as was done by her, related to nothing but such present repairs as were requested; and perhaps it is not an unfair implication from the fact that such papering and nothing else was requested by the lessee as a condition for a renewal of the lease, and was done by appellant, that the lessee understood she herself was to keep the rest of the building in repair.

The circumstance that appellant agreed to repair the porch after the upper rail was broken off, and, after the accident did so, amounts to nothing but a gratuity upon her part, if, as we hold, she was under no original obligation to keep the building in repair.

It is not infrequent that a landlord's self-interest will prompt him to do many things to his property, during the term of a lease of it, to protect it from decay or injury, but his so doing does not make him a covenantor to repair.

Under the facts of the case there can be no lawful recovery, and the judgment should be reversed without remanding the cause, and it is so ordered.